**UNITED STATES of America**

v.

**Sharon MARSHALL, Defendant.**

**Crim. No. CR91–41.**

United States District Court, W.D. Pennsylvania,

Aug. 13, 1991.

R. Leight, Asst. U.S. Atty., Pittsburgh, Pa., for U.S.

Ralph Karsh, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

LEE, District Judge.

Presently before the Court is the defendant's "Motion to Suppress Evidence and Oral Statements."

The defendant requests that the following evidence seized as a result of a search of the defendant's person and her belongings be suppressed:

"(A) Four (4) packages of a substance believed to be cocaine found in luggage in the defendant's possession;

"(B) A Greyhound bus ticket listing New York as the point of destination;

"(C) An unknown amount of United States currency;

"(D) Any other items seized as a result of the search;

"(E) Any statements or admissions made by the defendant at the time of her arrest."

In support of her Motion, the defendant asserts that (i) she was arrested on March 1, 1991, without a warrant and without probable cause in violation of the Fourth Amendment of the United States Constitution; (ii) that the search warrant was based upon an affidavit which states that the informant was a reliable source of information when in fact said informant was not a reliable source of information; (iii) the affidavit states that a second confidential informant, who was untested, offered information which corroborates the alleged reliable source when in fact the second informant's information contradicts the "reliable" informant's statements; (iv) the affidavit contains no information which indicates Sharon Marshall is the unknown black female alluded to by the confidential informant; (v) that oral statements made by the defendant to Detective Victor Joseph should be suppressed because he continued to question the defendant without the presence of an attorney when she told him she did not want to waive that right; (vi) that if the defendant signed a waiver of rights form, it appears that the signature was affixed contemporaneously with a negative response to a waiver of said rights; (vii) the defendant was without adequate

knowledge and comprehension to make a meaningful choice regarding the waiver of her rights; and (viii) the defendant was not adequately advised of her constitutional rights to the extent that she could fully understand them.

## FINDINGS OF FACT

After an evidentiary hearing at which the defendant did not testify, the Court makes the following findings:

(1) The defendant was arrested on March 1, 1991, at approximately 2:15 p.m. at the Conley Motel in Wilkins Township, Pennsylvania, near the Greyhound Bus Depot.

(2) The arrest was without a warrant.

(3) The arresting police officers had received information implicating defendant as being in possession of cocaine being transported from New York City to the Pittsburgh area for distribution by Delroy A. Facey.

(4) The police subsequently obtained a search warrant number which was introduced into evidence as Government's Exhibit No. 1.

(5) The police officers had received information from a confidential informant who advised them that Delroy Facey was transporting cocaine from New York to Pittsburgh to sell the drugs in Pittsburgh; Facey had been dealing in drugs in the Pittsburgh area for the past three years; during the week of February 24, 1991, he was in the company of Facey who stated that he would be in supply of cocaine the coming weekend; that he would have his girl from New York bring in a shipment via a Greyhound bus; and his girlfriend would get off the bus at the Monroeville stop due to recent drug arrests at the City terminal.

(6) The confidential informant in January 1991 supplied the police with information which resulted in the arrest of Robert Reed and the seizure of a large amount of cocaine (approximately nine ounces), which case is still pending in the Courts of Allegheny County.

(7) The confidential informant also provided the police with information resulting in the arrest and conviction of Shawn Poindexter for cocaine in 1989.

(8) The police officers also received information from a second untested informant who confirmed that Facey was a distributor of cocaine in the Pittsburgh area; that he transported cocaine from New York to Pittsburgh to sell it because it was cheaper to buy in New York and bring it to Pittsburgh to sell at a higher price; Facey utilizes a rental car agency to transport the cocaine in Pittsburgh and that Facey is a Jamaican national who is wanted by Immigration authorities for immigration violations.

(9) The search warrant was issued by District Magistrate Anna Marie Scharding on February 28, 1991, at 9:30 a.m.

(10) The warrant described the persons to be searched as follows:

"Sharon Marshal BF–26, First & Last names unknown (FNU LNU) BF, 28–33 Y.O.A. (possibly from New York) Delroy A. Facey, BM, Jamican (sic) National 31 Y.O.A. 5 ft. 8 in. 145 lbs . . . ."

(11) The defendant was observed by the police officers exiting a Greyhound bus in the Monroeville area with a child and carrying a suitcase and a small overnight bag.

(12) The defendant walked toward the Conley Motel from the depot and was stopped by the police officers in the Conley Motel when she was asked her identity. She replied she was Sharon Marshall. She was advised that the police officers had a search warrant to search her person.

(13) The defendant said the suitcase did not belong to her and it was given to her by a woman in Harrisburg.

(14) After the defendant made the statement about her non-ownership of the suitcase, Detective Donald R. Wilson stopped her and advised her of her Miranda rights. Thereafter, the defendant acknowledged that she understood her rights. Detective Wilson asked her about the suitcase. The defendant replied that a woman gave it to her and it was to be dropped off at the Western Union Office in the East Liberty section of Pittsburgh, Pennsylvania.

(15) The suitcase was then searched and disclosed four packages of what appeared to be four kilos of cocaine.

(16) The defendant was then formally placed under arrest.

(17) Detective Benny Sledge then read the defendant her rights again, and she stated she understood her rights.

(18) Prior to the search of the suitcase, the defendant was surrounded by three officers.

(19) At the time of her arrest, the defendant was 27 years of age and had a high school education.

(20) After her arrest, the defendant was taken to the Public Safety Building at Carson Street, Pittsburgh, Pennsylvania, arriving at approximately 3:00 p.m.

(21) At 3:42 p.m., the defendant was questioned by Detective Victor Joseph in a room approximately 20 by 25 feet with a desk and various chairs. Detectives Cain and O'Neil were also present.

(22) Detective Joseph read the defendant's Miranda rights to her from a "Pre-interrogation Warning Form," Exhibit 2, which was completed by Detective Joseph after the defendant stated again that she understood her rights.

(23) The form, Exhibit 2, was then signed by the defendant and witnessed by Detectives Victor Joseph and Leo O'Neil.

(24) At 3:43 p.m., the defendant indicated that she was not willing to answer questions without the presence of an attorney. The questioning immediately ceased.

(25) At 3:50 p.m., while the defendant's booking was continuing and while the police officers were talking among themselves about matters not dealing with the case, the defendant initiated communication with the police officers indicating she wanted them to understand her side of the story.

(26) The defendant then made statements which are the subject of the Motion to Suppress.

(27) The defendant was not handcuffed, but may have had a leg restraint.

(28) The defendant was in custody from 2:15 p.m. to 3:50 p.m. before she gave a statement.

(29) After initiating the conversation with the police officers at 3:50 p.m., the defendant did not indicate a desire thereafter to speak to anyone, including an attorney or have anyone, including a relative, notified.

(30) Thereafter, the defendant did not request or demonstrate a desire to remain silent.

(31) The interrogating police officers did not make threats or promises to induce the defendant to make any statement.

(32) The interrogating police officers did not use physical violence to procure defendant's statements.

(33) The defendant was alert and responsive to questions when making her statements.

(34) The acquisition of the search warrant, its execution, the arrest of the defendant and her custodial interrogation was performed exclusively by local police officers and involved no federal law enforcement agencies in any way.

## CONCLUSIONS OF LAW

■ (1) The warrantless arrest of defendant was based on probable cause.

■ (2) The search warrant was based on probable cause and was properly issued by the District Justice, Anna Marie Scharding.

■ The police acted properly when they executed the warrant.

■ (4) After the interrogation of the defendant ceased because of her invocation of counsel, the defendant thereafter knowingly and voluntarily initiated a discussion with the police officers.

(5) The defendant did knowingly and voluntarily waive her right to the assistance of counsel and her right to remain silent during her custodial interrogation. The defendant was properly warned of these rights by interrogating police officers prior to any interrogation.

(6) The statements given to the police by defendant were made after the defendant was warned of her Miranda rights and were freely and voluntarily given.

(7) The statements of the defendant were not reduced to writing, read to and signed by the defendant.

█ (8) Based on the totality of the circumstances and facts, the statements given by the defendant to the police after repeated Miranda warnings and after her freely, knowingly and voluntarily initiating discussion subsequent to her prior invocation of counsel, were products of her free will and were voluntarily and freely given. *Cf. Minnick v. Mississippi*, 498 U.S. ——, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990).

An Order will be entered denying the defendant's Motion to Suppress.

### ORDER OF COURT

AND NOW, this 13th day of August, 1991, the defendant's "Motion To Suppress Evidence and Oral Statements" is hereby DENIED.